

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Tom C. King
State Auditor and Efficiency Expert
Austin, Texas

Dear Mr. King:

Opinion No. O-2868

> Re: Whether or not a State officer
> or other State agent may law-
> fully enter into a contract
> such as the proposed air line
> agreement for transportation.

This will acknowledge receipt of your letter of
October 30, 1940, requesting the opinion of this department
as to the right of a State officer or other State agent to
enter into a contract with an air line company, as follows,
to-wit:

> "1. DEPOSITS AND CHARGES.--Subscriber
> agrees to make an initial deposit of $425.00
> for which the airline Company will establish an
> Air Travel Account for Subscriber against which
> tickets, including excess baggage charges, is-
> sued to Subscriber's Card Holders will be
> charged. At least once each month, or more
> often as the Company may require, Company will
> bill Subscriber for value of tickets, including
> excess baggage charges, not previously billed,
> at full one-way rates, less fifteen per cent
> (15%) (provided that, if in any case Subscriber
> would otherwise be entitled to a round-trip fare
> and such round-trip fare would be lower than the
> discounted fare herein provided for, Subscriber
> shall be entitled to such lower fare). Subscriber
> agrees to remit immediately the amounts billed,
> the remittance to be credited to Subscriber's Ac-
> count, so as to maintain the Account at $425.00
> as nearly continuously as possible.

> "2. ANNUAL LIMITATION ON DISCOUNT.--If the
> total charges against Subscriber's Account for

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

tickets, including excess baggage charges, at full one-way rates, on which the discount provided in paragraph 1 of this Agreement has been allowed, average, during any calendar year, or during such portion of a calendar year as Subscriber's Account is outstanding, less than $25.00 monthly, Company shall bill Subscriber at the end of the calendar year for total of all fifteen per cent (15%) discounts allowed Subscriber during such calendar year, and Subscriber agrees to remit immediately the amount billed. In the case of an Account outstanding during less than the full calendar year any portion of a month shall count as a month in determining the average monthly value of tickets charged against the Account. In billing for unearned discounts at the end of a calendar year Company will allow Subscriber the benefit of all lawfully-published discounted fares (such as round trip fares) on tickets to which such fares are applicable.

"3. DELIVERY OF CARDS.--Cards shall be receipted for by Subscriber who agrees that they shall not be delivered to Card Holders until signed in ink by Card Holders for purposes of identification and countersigned by an official of Subscriber. New Cards will be issued for each calendar year and the replaced Cards shall be surrendered.

"4. CARD HOLDERS.--Upon request in writing by Subscriber, Company will issue Cards to any eligible individual. Those eligible to receive or hold Cards are: If Subscriber is other than an individual, the officers, directors, partners, and employees of Subscriber, and officers, directors, and employees of any corporate affiliate of Subscriber; or, if Subscriber is an individual, the Subscriber, his employees, and members of his immediate family. 'Immediate family' means a spouse, minor children, dependent relatives, and dependents in the household. Subscriber agrees to request Cards only for individuals eligible to receive Cards under this Agreement, and to disclose to the Company the facts necessary to establish the Card Holder's eligibility.

**"5. USE OF AIR TRAVEL CARDS.--A Card may be used only to purchase tickets for the transportation of the Card Holder, and tickets so issued are not transferable."** Cards are not good for passage, but will be honored in lieu of cash for the issuance of tickets, including excess baggage charges, on the lines of the Company and such other airlines as are parties to the Universal Air Travel Plan Tariff on file with the Civil Aeronautics Authority, when presented by Card Holders at any of the city or airport ticket offices of such airlines. Tickets will not be issued hereunder except upon presentation of Cards and signing of receipts. Only airline employees are authorized to issue tickets hereunder.

**"6. TICKETS WITHOUT DISCOUNT ON SPECIALLY DESIGNATED AIR LINES.--**Subscriber agrees that Company may issue on authority of the Card tickets for transportation on airlines (not parties to the Universal Air Travel Plan Tariff) which have been specially designated by Company in writing to Subscriber, and that any such tickets shall be charged against Subscriber's Account at lawfully-published rates and shall be paid for by Subscriber without the discount provided in paragraph 1 of this Agreement.

**"7. RESPONSIBILITY FOR USE OF CARDS.--**Company will use reasonable care and precaution to prevent Cards being used by persons other than Card Holders, but if Cards are used by any unauthorized or ineligible person or for any unauthorized purpose, Subscriber shall be responsible for the value of the tickets issued, including excess baggage charges, without the benefit of the discount provided for in paragraph 1 of this Agreement. If Subscriber desires to terminate its responsibility for the use of a Card, or if a Card has been lost or destroyed, Subscriber agrees to notify Company thereof and request the cancellation of such Card. Upon receipt of the notice, Company will take steps to prevent the use of such cancelled Cards, but if, notwithstanding such steps,

the Card shall be honored within a period of eight days following receipt of such notice, Subscriber shall be responsible for transportation furnished thereunder. Subscriber further agrees to notify Company immediately whenever the status of any Card Holder changes in such manner that the Card Holder is no longer eligible to hold a Card under this Agreement, and to return the Card to Company for cancellation.

"8. CARDS NOT TRANSFERABLE.--Air Travel Cards are not transferable and may be taken up if presented by persons other than Card Holders.

"9. CANCELLATION OF RESERVATIONS.--Reservations not used must be cancelled by Card Holders at such times before plane departures as may be required by the rules and regulations of the airline on which passage is reserved.

"10. LIABILITIES.--The Company and the other airlines on which Cards may be honored shall be liable only for their respective acts.

"11. TICKET REFUNDS.--When flights are cancelled or uncompleted due to causes not within the control of the passenger, refund may be made to the passenger. Such refunds, at the option of the refunding airline, may be made by checks or orders for substitute transportation by other carriers; refunds by check shall be limited to the unused ticket values less the discount provided for in paragraph 1 of this Agreement applicable to such unused ticket values. Otherwise, refunds shall be by credit to Subscriber's Account after tickets are surrendered to Company.

"12. TERMINATION AND SETTLEMENT.--This Agreement shall continue in effect until terminated by either party giving eight days' written notice to the other at the address appearing herein. Company may, however, terminate it at any time in event of default of Subscriber. Company may revoke the right to use Cards issued hereunder at

any time after receipt by either party of
notice of termination. Upon termination,
all outstanding Cards shall be surrendered
to Company and Company will settle by re-
turning the amount remaining in Subscriber's
Account, which will be the difference between
the amount of deposit and any unpaid charges.
If, however, in any event, less than $325.00
in travel value has been used, the amount re-
turned shall be reduced by the sum of all
fifteen per cent (15%) discounts previously
allowed. In the event the unpaid travel
value that has been furnished to Subscriber
exceeds the balance remaining in Subscriber's
Account, Subscriber agrees to pay the Com-
pany promptly the amount of such excess, less
the discount provided for in paragraph 1 of
this Agreement. In the event that the Com-
pany brings suit on any debt of Subscriber
incurred under this Agreement Company shall
be entitled to recover, in addition to the
amount of the debt, its costs and reasonable
attorneys' fees.

*13. CIVIL AERONAUTICS AUTHORITY RULES
AND REGULATIONS.--This Agreement shall be sub-
ject to any applicable tariff and to the rules,
regulations and orders of the Civil Aeronautics
Authority.

---

*Except that, by signing a supplemental One
Trip Air Travel Order Agreement, the Sub-
scriber may arrange for limited authority to
secure tickets for eligible non-cardholding
persons to whom the Subscriber does not wish
to issue cards."

We assume, of course, you are concerned only
with the use of public funds by the subscriber or pur-
chaser under the terms of such contract, and make our
answer accordingly.

Public officers and State agents -- the creatures
of the law -- have only such powers as are expressly confer-

red upon them by law, or such as are necessarily implied as an incident to the execution of the express powers conferred.

If authority upon the part of a State officer, board or agency to make the proposed contract exists, it must be found in some statute. There is no statute expressly giving such power, nor is there, in our opinion, any statute which by any reasonable interpretation could imply such power.

The matter of travel expense in connection with the transaction of State business by the State officers, boards and agents is controlled, usually, by specific appropriations in the respective biennial appropriations. The proposed contract plan is not only not authorized by statute or by appropriation act, but, on the other hand, is contrary to the scheme and plan contemplated by the Legislature and actually in practice throughout this State -- that is, a pay-as-you-go plan, taking receipts and presenting monthly sworn accounts for audit and warrant to be paid in the ordinary course.

The proposed contract violates, and is contrary to, this entire statutory plan. Specifically, it is unauthorized because no officer or other agent of the State has authority to employ State funds to make the initial deposit required by the contract, and no such officer or agent is authorized to remit State funds immediately upon receiving a bill therefor, as required by the proposed contract, and no such officer or agent is authorized to contract for a liability on behalf of another who might wrongfully procure tickets upon the card of the officer or agent.

Trusting that this constitutes a satisfactory answer to your inquiry, we are

Very truly yours

ATTORNEY GENERAL OF TEXAS

By

Ocie Speer
Assistant

OS-MR

APPROVED NOV 4, 1940

Gerald C. Mann

ATTORNEY GENERAL OF TEXAS